[No. B209548. Second Dist., Div. One. July 31, 2009.]

1538 CAHUENGA PARTNERS, LLC, Plaintiff, v.
TURMEKO PROPERTIES, INC., et al., Defendants.

TRE HOLDINGS, LLC, et al., Claimants and Appellants, v.
WMC MORTGAGE, LLC, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 1., 2., 4., 5. and 6.

## COUNSEL

Law Office of Jeffrey S. Flashman and Jeffrey S. Flashman for Claimants and Appellants.

Cunningham & Treadwell, Francis J. Cunningham III and David S. Bartelstone for Defendant and Respondent.

## OPINION

**ROTHSCHILD, Acting P. J.**—TRE Holdings, LLC (TRE), and Tremaine Fowlkes, its principal, appeal from a judgment in favor of WMC Mortgage, LLC (WMC), pursuant to a stipulated settlement (Code Civ. Proc., § 664.6).[1] We affirm.

---

[1] All statutory references are to the Code of Civil Procedure.

## FACTS AND PROCEEDINGS BELOW

In December 2004, plaintiff 1538 Cahuenga Partners, LLC, filed an action against defendants Turmeko Properties, Inc., WMC, and others to cancel a reconveyance and to quiet title to property on Reading Avenue in Los Angeles. (We will refer to this as the Cahuenga action.) TRE and Fowlkes were not named parties in the Cahuenga action but became parties to its settlement. In a previous action TRE had obtained a judgment lien against Turmeko, recorded a lis pendens with respect to the property, and made a claim in the Cahuenga action for money interpled in this action.

In November 2006 persons interested in the Cahuenga action, including TRE, stipulated orally before the court to "absolutely, fully, and forever release, relieve, waive, relinquish, and discharge one another individually and collectively . . . from any and all . . . liens of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected . . . ." The settlement agreement contained specific provisions regarding WMC's security interests in the Reading Avenue property. The agreement stated in relevant part: "WMC's loans shall survive the releases set forth herein. Those WMC loans are secured by a first and second deed of trust against the property. Those deeds of trust will likewise survive these releases." "[A]s further and additional consideration to WMC, the parties . . . on behalf of themselves, individually and collectively, and their . . . stockholders, officers, directors, . . . employees, . . . representatives, assigns, and successors acknowledge and stipulate that the WMC first [trust deed], which secures the WMC first note currently in default with a pay-off amount in the sum of $568,053.62 and the WMC second [trust deed] which secures the WMC second note currently in default with a pay-off amount in the sum of $222,747.11 are senior priority liens in and to the subject realty, which are superior to any and all lien interests and/or encumbrances in and to the subject realty that are held, owned, and/or claimed by . . . TRE Holdings . . . ."

The attorney representing TRE stated in open court that he understood the terms of the agreement and accepted them on behalf of Fowlkes, TRE's principal. (Fowlkes had left the courtroom and his attorney could not locate him.) The court added that it had gone over the terms of the agreement with Fowlkes and his attorney in chambers and that Fowlkes understood the terms and agreed to them.

At the time TRE entered into the settlement agreement in the Cahuenga action, TRE and Fowlkes had another action pending against Turmeko involving the Reading Avenue property and had recorded a lis pendens regarding that property.[2] (We will refer to this as the TRE action.) WMC was not a defendant in the TRE action. In accordance with the settlement agreement in the Cahuenga action, TRE and Fowlkes withdrew the lis pendens they had recorded with respect to the TRE action. Three months after agreeing to the settlement in the Cahuenga action, however, TRE and Fowlkes obtained a judgment in the TRE action which, among other things, awarded them the sum of $83,624.87 and a lien in that amount against the Reading Avenue property purporting to have priority over the security interests of WMC through its deeds of trust.

When TRE and Fowlkes attempted to enforce their judgment lien on the Reading Avenue property, WMC responded in two ways. First, it brought an action against TRE and Fowlkes alleging breach of the Cahuenga action settlement agreement and seeking an injunction restraining TRE and Fowlkes from levying on the Reading Avenue property in satisfaction of their judgment in the TRE action. (We will refer to this as the WMC action.) Second, it moved in the Cahuenga action for entry of judgment pursuant to the terms of the settlement in that action.[3]

The court granted WMC's motion for judgment in accordance with the terms of the Cahuenga action settlement. The judgment states in relevant part that on November 7, 2006 TRE and Tremaine Fowlkes "as principal of TRE Holdings . . . entered into a stipulation for settlement of this action." It further states that the WMC first and second trust deeds "are existing and valid first and second trust deed liens against the subject [Reading Avenue] property, senior and superior to any claimed lien by TRE Holdings and/or Tremaine Fowlkes as principal of TRE Holdings, by reason of that certain judgment obtained by TRE Holdings and Tremaine Fowlkes in the [TRE action]." The court did not enjoin TRE or Fowlkes from levying execution on the Reading Avenue property.

TRE and Fowlkes filed a timely appeal.

---

[2] This is not the action that resulted in the *initial* judgment lien against Turmeko that TRE sought to enforce through the Cahuenga action.

[3] Section 664.6 states: "If parties to a pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

## DISCUSSION

TRE and Fowlkes assert eight reasons why the judgment should be reversed. None has merit.

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. *Since Fowlkes was not present to consent to the settlement on the record, the settlement cannot be enforced against TRE.*

■ Fowlkes did not have to consent to the settlement "on the record." The Legislature eliminated the "on the record" requirement in 1994. (Stats. 1994, ch. 587, § 7, p. 2912.) At the time TRE agreed to the settlement, section 664.6 stated in relevant part: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court *or orally before the court,* for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."[4] (Italics added.) The statute does not require that the party to be bound consent to the settlement "on the record," only that the party consent to it "orally before the court." ■ Fowlkes was not in the courtroom when the settlement agreement was orally stated by counsel for the respective parties and recorded by the court reporter. His counsel, however, was present and represented that he understood and agreed to the terms of the agreement on Fowlkes's behalf. After counsel made that representation, the court added: "And I will state for the record that I did spend some time with counsel and Mr. Fowlkes in chambers. . . . He had these deal terms fully explained to him, he understood them, and he told the court that he agreed to them." Fowlkes's oral statement to the court in chambers that he understood and agreed to the terms of the settlement satisfied the requirement that the party stipulate to the settlement "orally before the court."

4.–6.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 139.

[4] The 1994 amendment deleted the words "on the record" following the word "orally."

## DISPOSITION

The judgment is affirmed. Respondent WMC is awarded its costs on appeal.

Chaney, J., and Miller, J.,[*] concurred.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.